UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  08-21569-CIV-MORENO**

HOLSTON  INVESTMENTS  INC.  B.V.I.  and
ALBERT P. HERNANDEZ,

       Plaintiffs,

vs.

LANLOGISTICS, CORP.,

       Defendant.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case arises from a violation of a right of first refusal.  Plaintiffs, Holston Investments, Inc., B.V.I. and Albert P. Hernandez, were holders of the right to purchase LanBox, Inc., a company that facilitates mail deliveries to South America and Europe.  Defendant LanLogistics Corp. sold LanBox to a third party, Paul Gartlan over two years ago.  The deal between LanLogistics and Mr. Gartlan was for the sale of three companies, LanBox, SkyNet, and All Carriers, for $3.5 million dollars. Never having an opportunity to match the deal, Plaintiffs sued claiming Defendant breached the right of first refusal.

After reviewing the cross-motions for summary judgment, the Court does find the sale of the three companies triggered the right of first refusal and Defendant breached that right.  There are genuine issues of material fact that remain for trial such as LanBox's value, its purchase price, and Plaintiffs' financial wherewithal at the time of the sale.

THE COURT has considered the motions, the response, oral argument, and the pertinent

portions of the record, and being otherwise fully advised in the premises, it is

      **ADJUDGED** that Plaintiffs' Motion for Summary Judgment **(D.E. No. 51)** filed on **March 9, 2009** is GRANTED and Defendant's Motion for Summary Judgment **(D.E. No. 42)**, filed on **February 17, 2009** is DENIED.

## I. FACTUAL BACKGROUND

      Plaintiffs and Defendant have filed cross-motions for summary judgment in this breach of contract case. Plaintiffs Holston Investments, Inc., B.V.I. and Albert P. Hernandez filed suit claiming Defendant LanLogistics, Corp. violated a right of first refusal contained in a 2004 Agreement. More specifically, Plaintiffs claim Defendant violated a right of first refusal when it sold LanBox, Inc., a subsidiary of LanLogistics, to a third party, Paul Gartlan, without first giving Plaintiffs an opportunity to match the offer.

      LanBox (also known as SkyBox) is a "facilitator" of purchases for customers who live in Latin America and Europe. When these customers make purchases on the Internet or through catalogs in the United States, LanBox provides a physical mailing address in Miami where those packages can be delivered. LanBox then delivers those packages directly to the customers at their home or office. Mr. Hernandez was a founding member of LanBox and both he and Holston Investments, Inc. owned varying amounts of LanBox stock until the time of the sale to Defendant LanLogistics. In exchange for Mr. Hernandez and Holston's remaining shares of LanBox, the parties negotiated a right of first refusal. According to Plaintiffs, the right of first refusal was a major consideration of the sale to LanLogistics. Plaintiffs claim that if LanLogistics ran LanBox poorly, they would be able to reacquire the company at a good price. The 2004 Agreement contained the following right of first refusal language:

**A. Right of First Refusal**. Except with respect to a Transfer (as such term is defined below) by LanLogistics to a Permitted Transfer, the Parties agree that should LanLogistics wish to Transfer any or all of its equity interest in the Company (whether in possession of LanLogistics or any Permitted Transferee), then APH [i.e. Plaintiff Albert Hernandez] and Holston shall [have] the following right of first refusal with respect to any such Transfer (the "Right of First Refusal"):

(i) <u>Transfer Notice</u>.  If LanLogistics or any Permitted Transferee (in each case, a "Selling Shareholder") desires to transfer any equity interest it may have in the Company . . .(the "Offered Stock"), the Selling Shareholder shall first give written notice (a "Transfer Notice") thereof to each of APH and Holston, identifying the proposed transferee, the number of Offered Stock sought to be transferred, the proposed purchase price (the "Offered Price"), the terms of the proposed transaction  including the proposed transaction date and . . . a copy of any written offer or other writing setting forth the terms and conditions of the proposed transaction.  Such transfer notice shall constitute an irrevocable offer by the Selling Shareholder to sell the Offered Stock to APH and Holston at the Offered Price and upon the same terms and conditions as the Selling Shareholder is willing to sell the Offered Stock to the proposed transferee.

*See* 2004 Right of First Refusal Agreement.  The Right of First Refusal Agreement started on April 21, 2004 and extended until April 21, 2007.   On January 19, 2007, Mr. Gartlan presented an offer to purchase LanBox and Skyworld International Couriers, Inc. ("Skynet"), another subsidiary of LanLogistics. LanLogistics accepted an April 9, 2007 offer from Mr. Gartlan on April 12, 2007, during the term of the right of first refusal. The deal, however, did not close until May 16, 2007, a few weeks after the right of first refusal expired.

Mr. Gartlan and LanLogistics closed on a $3.5 million dollar deal, which included LanBox, SkyNet, and a collection of certain assets LanLogistics refers to as the "All Carriers" line of business. The companies were sold as a package.

Defendant claims Mr. Gartlan provided a tax allocation of the purchase price for each of the

assets in the May 16, 2007 Stock Purchase Agreement. A tax allocation is a tax term of art from section 1060 of the Internal Revenue Code where a group of assets are sold that make up a business, and the buyers and sellers agree to a good faith allocation of the value of each asset. On the IRS Form 8594, which both parties file, the businesses were separated into two separate purchases. In one sale, the parties valued the LanBox business at $450,000 and SkyNet at $50,000. The separate transaction was for the All Carriers line of business, for which Mr. Gartlan signed a promissory note. In conjunction with this transaction, Mr. Gartlan signed over to LanLogistics all of the stock in LanBox and SkyNet as collateral for the note.

Plaintiffs claim the $450,000 was not a mere tax allocation but rather a true reflection of the purchase price of the company. To support this contention, Plaintiffs point to a draft Stock Purchase Agreement dated April 15, before the expiration of the right of first refusal.[1] The Stock Purchase Agreement allocates the purchase price among the three entities. *See* Exh. 1 to Plaintiffs' Reply Brief (filed under seal). LanBox is listed at $450,000.

Mr. Gartlan testified at his deposition that there was a tax motive to the price allocation. Although there was this motive, Mr. Gartlan further testified the purchase price allocation was a true reflection of the value of the three companies. *See* Exh. 5 to Plaintiffs' Reply Brief. Mr. Gartlan added that his accountant reviewed and agreed that the price allocated was a fair representation of the companies' value. *Id.* Mr. Javier Luck, LanLogistics' CFO, claims the parties never negotiated a price allocation prior to the expiration of the right of first refusal period. He did, however, send the April 20th email attaching the draft agreement that allocated the price. Defendant vehemently

---

[1] The actual document includes an April 15, 2009 date. The Court can only conclude that 2009 is a typo as April 15, 2009 was almost two years after the document was attached to an email dated April 20, 2007. More conceivably, the document was drafted on April 15, 2007.

challenges the credibility of Mr. Gartlan's testimony as self-serving. LanLogistics claims that Mr. Gartlan made an unsupported belief as to the value of the three businesses to support an extremely aggressive tax position. As support, Defendant claims that neither Mr. Gartlan nor his accountant prepared any valuation of the three businesses to support the allocation.

At oral argument and in their reply brief, Plaintiffs concede that specific performance is not an appropriate remedy but rather are seeking a trial on damages. It is the Plaintiffs' view that damages are equal to the value of LanBox minus the $450,000 purchase price. The parties posit different values for LanBox and of course, Defendant zealously disputes that $450,000 constitutes the purchase price.

The cross-motions for summary judgment present several contractual issues -- was the right of first refusal triggered by the sale of the three companies and did Defendant violate it? If so, what are the damages? Should the Court consider Plaintiffs' financial wherewithal to close on LanBox?

## II. LEGAL ANALYSIS

*A. Was the Right of First Refusal Triggered?*

Rights of first refusal generally provide that if a third party is given an opportunity to buy the object of the right, then the right holder will be given notice and an opportunity to buy the object first. Rights of first refusal tend to exist for unique items for which there is no general market. There is no dispute that LanLogistics received third-party offers during the right of first refusal period. It is LanLogistics position that because it packaged LanBox with two other businesses when it agreed to sell it, then the right of first refusal was <u>not</u> triggered. Plaintiffs contend that even the package sale triggered the right of first refusal. It is undisputed that Plaintiffs were never offered an opportunity to match the package deal, let alone make an offer for LanBox.

The parties argue about whether the right of first refusal was triggered by LanLogistics desire to sell LanBox or by an actual offer and acceptance. "A right of first refusal is a right to elect to take specified property at the same price and on the same terms and conditions as those [contained] in [a] good faith offer by a third person if the owner manifests a willingness to accept the offer." *Coastal Bay Golf Club v. Holbein*, 231 So. 2d 854, 857 (Fla. 3d DCA 1970). Undisputedly, LanLogistics not only "desired" to transfer LanBox, it actually agreed to do it in conjunction with two other businesses, SkyNet and the All Carriers lines of business.

Defendants argue that because there was no offer to sell LanBox on its own for the $450,000 purchase price, the right of first refusal was never triggered. Put another way, because there was no offer to purchase LanBox for $450,000, Defendants claim that Plaintiffs have no right under the Agreement to enforce such a right. *Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Assoc. One, Inc.*, 986 So. 2d 1279, 1285 (Fla. 2008) (stating that Florida law requires an actual offer that a seller is willing to accept to trigger a right of first refusal); *Coastal Bay*, 231 So. 2d at 857 (finding that a right of first refusal ripens into an option when the obligor manifests a willingness to accept a good faith offer). It is undisputed that LanLogistics did not receive an offer from Mr. Gartlan to buy LanBox on its own without SkyNet and All Carriers. It did, however, receive and accept an offer to sell LanBox, SkyNet and All Carriers for $3.5 million. Defendant urges the Court that this package sale does not trigger the right of first refusal under Florida law.

The Fourth Circuit has evaluated whether a right of first refusal, with broad language as is present in this case, is triggered by a package sale. The Fourth Circuit stated that every court to consider this issue has held that the holder of a right of first refusal cannot be compelled to purchase more property than is subject to the right of first refusal, or else forfeit its refusal rights. *Pantry*

*Pride Enters., Inc. v. Stop & Shop Co., Inc.*, 806 F.2d 1227, 1229 (4th Cir. 1986); *see also Whyhopen v. Via*, 404 So. 2d 851 (Fla. 2d DCA 1981). The rationale behind the rule is obvious. To allow parties subject to a right of first refusal to package the product or business that is the subject of the contract would be to allow that party to render the right of first refusal a nullity merely by adding additional property to the deal. *Id.* This case is no different. To allow LanLogistics to sell LanBox to a third-party without giving Plaintiffs an opportunity to match the deal, is to allow them to render the right of first refusal a nullity.

Florida's *Whyhopen* case is in line with this reasoning. In *Whyhopen*, a landlord entered into an agreement to sell a leased parcel of land, upon which the tenants held a right of first refusal, along with contiguous parcels that were not subject to the tenants' preemptive right. *Whyhopen*, 404 So. 2d at 852-53. The landlord delivered a copy of the contract for sale as required by the right of first refusal and the tenants responded with a notice to exercise their right to purchase the parcel. *Id.* The landlord responded that the offer by the tenants was rejected because their offer failed to purchase all of the parcels that the landlord had included and only offered to buy the one parcel that was the subject of the right of first refusal. *Id.* Relying on the case of *Denco Inc. v. Belk*, 97 So. 2d 261 (Fla. 1957), the Florida appellate court held that the landlord's argument that "tenants were required to exercise their option as to all the land listed on the contract for sale is incorrect . . . . Once the landlord evidenced an intention to sell the property, tenants' right of first refusal was converted into an irrevocable option to purchase." *Whyhopen*, 404 So. 2d at 853. Like the landlord, LanLogistics cannot nullify the Plaintiffs' option, by combining LanBox with other products. More compelling in this case is that Plaintiffs were never even given the opportunity to match the package deal.

Having found the right of first refusal was triggered and Defendant violated it, the Court must

-7-

turn to the issue of damages.

### B. *What are the damages?*

The purchase price of LanBox is at issue. Plaintiffs are seeking that the Court find the purchase price of LanBox was $450,000, the amount claimed on the Stock Purchase Agreement, the Asset Purchase Agreement, and the 2007 Form 1120. Defendants argue the $450,000 was merely a tax allocation and to find that value was the purchase price would give Plaintiffs a windfall. Plaintiffs claim the evidence contradicts Defendant's assertion that the value is a mere tax allocation. To support this claim, Plaintiffs point to the Stock Purchase Agreement dated April 15, before the expiration of the right of first refusal. The April 15 draft of the Stock Purchase Agreement allocates the purchase price among the three businesses sold. *See* Exh. 1 to Plaintiffs' Reply Brief (filed under seal). LanBox is listed at $450,000. Moreover, Paul Gartlan, the buyer, testified at his deposition that the purchase price allocation was a true reflection of the companies' value. *See* Exh. 5 to Plaintiffs' Reply Brief. Gartlan added that his accountant reviewed and agreed that the allocated price was a fair representation of the companies' value. *Id.* Defendant vehemently challenges the credibility of Mr. Gartlan's testimony as self-serving. LanLogistics claims that Mr. Gartlan made an unsupported belief as to the value of the three businesses to support an extremely aggressive tax position. As support, Defendant claims that neither Mr. Gartlan nor his accountant prepared any valuation of the three businesses to support the allocation. At summary judgment, the Court is not tasked with evaluating the credibility of this evidence and accordingly, finds the value at which LanBox was sold is a disputed issue of material fact.

Whether the $450,000 is the true value of the company or a mere tax allocation has bearing on the amount of damages. In *Pantry Pride*, the Fourth Circuit held that where a sum was a mere

tax allocation, allowing the plaintiffs to exercise the right of first refusal at that price would give them a windfall because the tax allocation may bear no relation to the property's worth. The Fourth Circuit reasoned that allowing the purchase at the tax allocation price would be to create a value for the product over and above the bargain struck by the parties. *Pantry Pride*, 806 F.2d at 1231. "Put another way, [plaintiff] will have acquired a supermarket at an absurdly low price and on terms never really agreed to between [the parties]." *Id.* To resolve the damages issue, the Fourth Circuit ordered the parties to submit to the district court, on remand, evidence of the value of the property at the time of the offer. *Id.*, 806 F.2d at 1232.

Of course, the measure of damages has to flow from the breach. *Goldberg v. Paris Hilton Entm't., Inc.*, 2009 WL 2525482, *3 (S.D. Fla. Aug. 17, 2009). In their reply brief, Plaintiffs' claim that the damages flowing from the breach are equal to the value of LanBox minus the purchase price, which are both in dispute. At trial, the Court is concerned that the damages awarded do flow from the breach. The valuation of LanBox is of concern as it has been run by Mr. Gartlan for two years.

C. *Does the Court consider the Plaintiffs' financial wherewithal?*

Plaintiffs are required under Florida law to show that they were financially capable to consummate the transaction. *See Summit Blvd. Animal Clinic v. Lemon Tree Plaza*, 641 So. 2d 437, 438 (Fla. 4th DCA 1994) (affirming directed verdict for defendant in a case where there was no evidence to conclude that plaintiff had either funds on hand or the ability to obtain the necessary funds to purchase the property that was the subject of the right of first refusal). If Plaintiffs were not financially capable of matching the same terms and conditions offered by a third party, then they were not ready, willing, and able to exercise their right of first refusal and their claim fails. *Id.*

Whether Plaintiffs were financially capable to consummate the purchase of LanBox is a

disputed issue of material fact.  Defendant claims that Plaintiffs would have been unable to consummate the sale through SkyPostal, a company in which Plaintiff Hernandez had stock. SkyPostal was insolvent in 2007 and the cash flow statements indicate the company was in bad shape.  Plaintiffs counter that they could have raised the necessary funds as the prior owners of the business.  The deal that LanLogistics and Mr. Gartlan put together was not a cash deal.  The Court cannot at summary judgment speculate about Plaintiffs' ability to put together a deal.  Mr. Gartlan did <u>not</u> have $3.5 million to close and Plaintiffs likewise would not have needed $3.5 million cash on hand to close, only a pen.  Accordingly, the Court finds that Plaintiffs' financial ability is a disputed issue of material fact to be decided at trial.

DONE AND ORDERED in Chambers at Miami, Florida, this 18 day of September, 2009.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-10-