UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 08-21569-CIV-MORENO

HOLSTON INVESTMENTS INC. B.V.I. and
ALBERT P. HERNANDEZ,

    Plaintiffs,

vs.

LANLOGISTICS, CORP.,

    Defendant.
_____/

## ORDER DENYING MOTION TO VACATE THE JUDGMENT

"Jurisdiction" the Supreme Court has observed, "is a word of many, too many, meanings." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 90 (1998) (citations omitted). The dispute before this Court centers on the true meaning of this Court's diversity jurisdiction. The issue is what is the citizenship of a dissolved corporation to determine whether diversity jurisdiction exists. The Court follows precedent and finds the citizenship of a dissolved and inactive corporation is the state of its incorporation. Accordingly, the Court denies the motion to vacate the judgment and finds there is diversity jurisdiction in this case.

THIS CAUSE came before the Court upon Defendant's Motion to Vacate the Judgment **(D.E. No. 159)**, filed on **July 2, 2010**.

THE COURT has considered the motion, the response, oral argument, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED.

## I. BACKGROUND

Following a bench trial in this contract dispute, the Court issued Findings of Fact and Conclusions of Law finding Defendant breached the contract and was liable for $5,050,000 in damages, plus prejudgment and post-judgment interest. The Court issued judgment in favor of the Plaintiff on June 18, 2010. On July 2, 2010, Defendant moved to vacate the judgment under Federal Rules of Civil Procedure 12(b)(1) and 60 claiming the Court lacked diversity jurisdiction over the case. This case presents the rare instance where the Plaintiff wants federal court jurisdiction and the Defendant wants to avoid it.

Plaintiffs filed this case in federal court on June 6, 2008. To establish this Court's jurisdiction, Plaintiffs alleged there was complete diversity. The complaint alleged that at the time suit was filed Plaintiff Alberto Hernandez was a citizen of Florida and Plaintiff Holston Investments was a citizen of the British Virgin Islands. Plaintiffs alleged in the complaint that the Defendant LanLogistics, Corp. was a citizen of Delaware, the state where it was incorporated.

At the time the lawsuit was filed on June 6, 2008, LanLogistics was a dissolved corporation. LanLogistics dissolved in Delaware on December 27, 2007. Prior to that time, it is undisputed that LanLogistics's businesses were directed by its Chief Executive Officer, Julio Aninat, from the corporate headquarters in Miami, Florida.

LanLogistics claims the Court lacked diversity jurisdiction during the two plus years this case was pending because Florida was the last place from where Defendant's businesses were directed. Therefore, LanLogistics argues it was a citizen of both Delaware and Florida, which defeats the complete diversity requirement. Plaintiffs argue that very soon after its dissolution on December 27, 2007, Defendant LanLogistics filed an application with the State of Florida, Division of

Corporations, withdrawing from business in Florida. The application, which LanLogistics filed on January 8, 2008 with the Florida Division of Corporations, stated:

> This corporation is no longer transacting business or conducting affairs within the State of Florida and hereby voluntarily surrenders its authority to transact business or conduct affairs in Florida.

The application was processed by the State of Florida and filed on January 16, 2008.

Now, the Court must decide whether to vacate the judgment on diversity jurisdiction grounds. As an initial matter, the Court must also decide whether to apply the legal standard from Federal Rule 60(b) or Rule 12(b)(1).

## II. LEGAL ANALYSIS

The issues before the Court are two-fold. Because the Court has entered judgment, the Court must first determine what legal standard to apply to the motion to vacate the judgment. The Court must also decide what is the state of citizenship for LanLogistics, Corp., which incorporated in Delaware, dissolved there, and formally withdrew from business in Florida months before this suit was filed.

*1. What is the appropriate legal standard?*

The parties disagree on the appropriate legal standard for the Court to apply. The objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and entry of judgment. Rule 12(h)(3) instructs: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

To determine the appropriate standard, the Court must consider the procedural posture of this

case. After the Court entered judgment, Defendant LanLogistics filed a timely notice of appeal. Defendant filed the motion to vacate after appealing the adverse judgment in this case. Due to this procedural posture, the Defendant urges the Court that this is a direct attack on the Court's jurisdiction and not a collateral one, which would trigger a higher standard of review.

In Plaintiffs' view, the higher standard of review is needed to vacate the judgment. Under that standard, a Rule 60 attack is impermissible unless the movant shows that the court "plainly usurped jurisdiction," which occurs "only when there is a 'total want of jurisdiction' and no arguable basis on which it could have rested a finding that it had jurisdiction." *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986) (quoting *Lubben v. Selective Serv. System Local Bd., No. 27*, 453 F.2d 645, 649 (1st Cir. 1972)). In *Oakes v. Horizon Financial, S.A.*, 259 F.3d 1315, 1319-1320 (11th Cir. 2001), the Eleventh Circuit stated that a "mere error in the exercise of jurisdiction does not support relief under Rule 60(b)(4)." *Id.* at 1319-20. *Oakes*, however, was a collateral attack case, where the motion to vacate the judgment was over twelve years after the judgment was registered and after all appeal rights were exhausted. The procedural posture of this case differs from *Oakes* and *Nemaizer*.

Federal Rule of Appellate Procedure 4(a)(4)(A)(vi) tolls the time to file a direct appeal if, as here, a Rule 60 motion is filed within 28 days of the final judgment. LanLogistics argues this Appellate Rule confirms that the jurisdictional challenge is direct and the Court is to apply the lower standard of Federal Rule of Civil Procedure 12(b)(1). Under this standard, the burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Sweet Pea Marine, Ltd. V. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005) (requiring complaint to allege citizenship of defendant and

at a minimum that corporation is not a citizen of state that would destroy diversity).

The Court agrees with Plaintiffs that this is a belated motion, especially where as here the motion comes after an adverse judgment and is based on information the Defendant knew throughout the course of this litigation. That being said, the Court finds that the higher standard under Rule 60(b)(4) does not apply because the Defendant LanLogistics filed a timely notice of appeal. "Rule 60(b)(4) strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute." *United Student Aid Funds, Inc. v. Espinosa,* 130 S. Ct. 1367, 1380 (2010). In *Espinosa*, the Supreme Court found that where a party is notified and fails to object before the time for appeals expires, that party has been afforded a full and fair opportunity to litigate. *Id.* Unlike the party in *Espinosa*, the Defendant here timely appealed and raised the Rule 60(b)(4) motion within two weeks of the final judgment. Accordingly, the Court will allow LanLogistics a full and fair opportunity to litigate the issue of jurisdiction and will apply the lower standard set forth in Rule 12(b)(1). *See Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1322 n.6 (7th Cir. 1983) ("A litigant must show 'exceptional circumstances' to justify setting aside a default judgment [under Rule 60(b)]. Because defendants' timely notice of appeal has preserved for review the underlying judgment, defendants need not satisfy the stricter 'exceptional circumstances' standard.").

*2. Is there diversity jurisdiction?*

Having found that it is the Plaintiffs' burden to establish the Court's diversity jurisdiction, the Court must determine Defendant's citizenship. There is an inter-circuit conflict of authority regarding a dissolved corporation's citizenship and the Eleventh Circuit has not decided the issue. In *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 697-98 (3d Cir. 1995), the Third Circuit held that

an inactive corporation is only a citizen of the state of its incorporation. *Midlantic*, 48 F.3d at 696. The Third Circuit has explained that where a corporation is not engaged in business activities, because it is inactive or prohibited from conducting further business activity, it can only be considered a citizen of its place of incorporation. *Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287, 292 (3d Cir. 1998); *see also Ripalda v. Am. Ops. Corp.*, 977 F.2d 1464, 1468-69 (D.C. Cir. 1992) (finding diversity existed where corporation "formally withdrew" from the state and "its authority to transact business in that state" had been revoked) ; *Dunkle v. Show A Denko, K.K.*, No. 97cv245/RV, 1997 U.S. Dist. Lexis 16412, *6-7 (N.D. Fla. Aug. 12, 1997) (finding state of incorporation's law governed determination of defendant's citizenship and holding inactive corporation was only citizen of state of incorporation). Plaintiffs urge the Court to follow the *Midlantic, Ripalda,* and *Dunkle* line of reasoning and find LanLogistics is a citizen of Delaware, the state of its incorporation.

The Second, Fourth, and Fifth Circuits have not adopted the brightline rule set forth in *Midlantic* by the Third Circuit. Those Circuits have followed a variety of approaches to determine citizenship. The Second Circuit adopted the rule that "when a corporation has ceased business activity, diversity jurisdiction under 28 U.S.C. § 1332(c) is determined not only by its state of incorporation, but also by the place it last transacted business. ... Both the state of incorporation and the principal place of business should be considered in deciding whether diversity jurisdiction is present." *W.M. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 141 (2d Cir. 1991). The rationale underlying the *Passalacqua* approach is that "[t]o allow inactive corporations to avoid inquiry into where they were last active would give them a benefit Congress never planned for them, since under such a rule a defunct corporation, no matter how local in character, could

remove a case to federal court based on its state of incorporation." *Passalacqua*, 933 F.2d at 141.

The Fifth Circuit's holding in *Harris v. Black Clawson Co.*, 961 F.2d 547, 550 (5th Cir. 1992) falls somewhere between *Midlantic* and *Passalacqua*. In that case, the Fifth Circuit adopted a facts and circumstances test. It held that the place of an inactive corporation's last business activity is relevant to determine diversity, but that factor is not dispositive. The *Harris* Court concluded that a corporation, which has been inactive for a substantial period of time, in that case five years, is a citizen only where it is incorporated. *Id.*, 961 F.2d at 551.

In *Athena Automotive Inc. v. DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999), the Fourth Circuit examined the holdings of *Midlantic*, *Passalacqua*, and *Harris*. It rejected the bright-line approaches of *Midlantic* and *Passalacqua*, and emphasized that a "court must analyze the facts of each case to determine as of the date the action was commenced whether a corporation's business activity was sufficient to make it a citizen of the state of such activity." *Athena Automotive*, 166 F.3d at 291. In *Athena Automotive*, the Fourth Circuit followed *Harris* and took a "facts and circumstances" approach to determining citizenship.

A review of these cases persuades this Court that Delaware is the appropriate state of citizenship and not Florida. Although the affidavit of Gaston Greco provided by LanLogistics shows that the corporation did wind down its affairs in Florida, the affidavit did not disclose the application with the State of Florida to formally withdraw and terminate all business activities in Florida. That application was on file more than five months before suit was filed. This case is not like *Passalacqua*. Unlike *Passalacqua* where the corporation was still a corporation in good standing in Florida despite having dissolved in Ohio, LanLogistics did file a voluntary surrender of all business activities in Florida. *Passalacqua*, 933 F.2d at 141. Moreover, the Court does not find

*Harris* and *Athena Automotive* helpful to decide citizenship. Even if the Court were to look at the "facts and circumstances," the facts and circumstances of this case are that LanLogistics formally withdrew from conducting business in Florida. That fact was not present in either *Harris* or *Athena Automotive*.

Rather, this case is more like *Ripalda* and *Dunkle*, where a dissolved corporation took steps to formally withdraw from business in a state where it conducted business. In *Ripalda*, the D.C. Circuit emphasized that Delaware law governs a defendant's capacity to sue and be sued. *Ripalda*, 977 F.2d at 1468 (stating that state corporate law determines the suability of dissolved corporations); *Grguric v. Little Mermaid South, Inc.*, No. 07-81219, 2008 WL 1766889, at *2 (S.D. Fla. Apr. 14, 2008) ("A dissolved corporation may be sued if so permitted under the law of state of incorporation.") (citing Fed. R. Civ. P. 17(b)); *Dunkle*, 1997 U.S. Dist. Lexis 16412, at *10 (N.D. Fla. Aug. 12, 1997) ("A corporation's right to sue and be sued is determined by the law of the state where it is incorporated."). Pursuant to section 278 of Delaware Code, codified at Del. Code Ann. Tit. 8, § 278 (West 2010), despite being dissolved for other purposes, LanLogistics continues to exist in Delaware for the purpose of being sued in this action. *Id.* Indeed under this provision of Delaware law, LanLogistics continues to "for the term of 3 years from such expiration or dissolution . . . for the purpose of prosecuting and defending suits." *Id.*

Of the variety of cases before the Court, *Dunkle* presents the closest fact pattern to this case. *Dunkle* involved a corporation that was allegedly owned, operated and controlled by Florida citizens. The corporation was both inactive and dissolved pursuant to Delaware law for three years prior to the date the suit was filed. In moving for remand, the plaintiffs in *Dunkle* argued that the dissolved corporation had its principal place of business in Florida. After reviewing *Passalacqua*, *Harris*, and

*Midlantic*, the *Dunkle* court adopted the *Midlantic* test and held it could "best be applied to a corporation which, as here, was both **inactive and dissolved** before litigation was initiated, and is the correct interpretation of the plain meaning of Section 1332(c)." *Dunkle*, 1997 U.S. Dist. Lexis, 16412, at *5 (emphasis added). Of course, this is a more difficult case than *Dunkle* where there was a three year period before the plaintiff filed suit. LanLogistics, here, sold most, if not all, of its assets in May 2007, a year before Plaintiffs filed suit and formally dissolved only months before Plaintiffs filed suit. Taken together with LanLogistics' other actions to cease all business activities in Florida, however, the time frame is sufficient to find Florida was not a principal place of business at the time Plaintiffs filed this case. Based on these factors and the applicable case law, the Court finds that sufficient time had passed to find that LanLogistics was only a citizen of Delaware and not Florida at the time Plaintiffs filed suit. *See also Grguric*, 977 F.2d at 1469 (holding that dissolved Delaware corporation that had formally withdrawn from and revoked its authority to conduct business in Virginia was citizen of Delaware, the state of incorporation, and not Virginia).

Defendant argues that following this line of reasoning violates the Supreme Court precedent of *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). In *Hertz Corp.*, the Supreme Court held that a corporation's principal place of business, for diversity purposes, is its nerve center. *Hertz*, however, did not involve a dissolved or inactive entity's citizenship, or an entity that intentionally withdrew from and voluntarily surrendered its authority to transact business or conduct affairs in a state. The Supreme Court in *Hertz* emphasized that in applying the "nerve center" approach, courts should identify the corporation's brain, or put another way, the location from where the officers direct all activities. *Id.*, 130 S. Ct. at 1192-93. In the case of a dissolved corporation that has formally withdrawn from business activities, the "nerve center" test does not make as much sense as

presumably the "corporate brain" is no longer directing business activities in various locations. Accordingly, the Court does not find that the *Hertz* nerve center test applies to this case involving a dissolved corporation that formally withdrew from business in Florida.

The Court, however, does find dicta in *Hertz* instructive. The Supreme Court in *Hertz* did emphasize that in deciding principal place of business courts should avoid complex tests. It said:

> Complex tests produce appeals and reversals, encourage gamesmanship, and again, diminish the likelihood that results and settlements will reflect a claim's legal and factual merits. Judicial resources too are at stake. Courts have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it. So courts benefit from straightforward rules under which they can readily assure themselves of their power to hear a case.

*Hertz*, 130 S. Ct. at 1193 (internal citations omitted). This Court finds that in the case of an inactive corporation that formally withdraws from business, the brightline rule should be followed as set forth in *Midlantic*. In following a brightline approach, which the Supreme Court encouraged in *Hertz*, the Court finds Plaintiffs have met their burden to establish the Court's diversity jurisdiction. Accordingly, the Court denies the motion to vacate the judgment.

DONE AND ORDERED in Chambers at Miami, Florida, this 7th day of February, 2011.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record